SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Jed Goldfarb v. David Solimine (A-24-19) (083256)**

**Argued September 15, 2020 -- Decided February 18, 2021**

**LaVECCHIA, J., writing for the Court.**

Plaintiff Jed Goldfarb claims that defendant David Solimine reneged on a promise of employment after Goldfarb quit his job to accept the promised position managing the sizeable investment portfolio of defendant's family. The key issue in this appeal involves whether plaintiff may bring a promissory estoppel claim because he relied on defendant's promise in quitting his prior employment even though, under New Jersey's Uniform Securities Law of 1997 (Securities Law or the Act), he may not bring a suit on the employment agreement itself.

Prior to meeting defendant, Goldfarb was employed as a research analyst tasked with analyzing financial markets in order to offer investment advice. From 2009 to 2013, he earned between approximately $308,000 and $466,000 per year, exclusively from commissions. Goldfarb met defendant in March 2013. According to Goldfarb's testimony, after several conversations, defendant offered him a job managing defendant's family's investment portfolio. His employment was to begin in July or August of 2013, and he would be formally employed by either defendant, defendant's father, or one of two of the family's companies. According to Goldfarb, defendant assured him on June 20, 2013 that he had a job. Goldfarb asked defendant for a term sheet, but defendant failed to provide any writing memorializing their agreement, and no written employment agreement was ever produced or presented to plaintiff. Nevertheless, counting on the new job that had been offered, Goldfarb quit his old one and began providing defendant with profitable stock tips and financial advice. Then, in August 2013, defendant told Goldfarb that he would not employ him. Goldfarb commenced this action in response.

Defendant argued that the agreement between the parties was governed, and barred, by the Securities Law. The trial court submitted the case to the jury on a theory of promissory estoppel. The court limited plaintiff's potential damages, describing them as restricted "to the minimum salary he would have made" in defendant's employ. The jury found for plaintiff on liability and awarded $237,000 in damages. The Appellate Division affirmed the verdict as to liability, but it concluded "that plaintiff was entitled to present evidence of his reliance damages" and remanded for a new trial limited to those damages. The Court granted defendant's petition for certification. 240 N.J. 83 (2019).

1

**HELD:** The Securities Law does not bar plaintiff's promissory estoppel claim for reliance damages. The Court affirms the liability judgment on that claim and the remand for a new damages trial in which plaintiff will have the opportunity to prove reliance damages. He is not entitled to benefit-of-the-bargain damages. To the extent that the Appellate Division relied on an alternative basis for its liability holding -- that a later-adopted federal law "family office" exception has been incorporated into our Securities Law -- the Court rejects that reasoning and voids that portion of the court's analysis.

1. Consistent with its investor-protective purpose, the Securities Law prohibits any party from engaging in dishonest and unethical practices as defined by the Chief of the Bureau of Securities. N.J.S.A. 49:3-53(a)(3). On the list of "[d]ishonest or unethical practices" prohibited by that statute, the Bureau of Securities has included "[e]ntering into, extending, or renewing any investment advisory contract, unless such contract is in writing and discloses" certain material terms. N.J.A.C. 13:47A-6.3(a)(57) (emphasis added). Although the writing requirement is found in a regulation, it is reinforced by statute: N.J.S.A. 49:3-71(h) declares that "[n]o person who has made or engaged in the performance of any contract in violation of any provision of this act or any rule or order hereunder . . . may base any suit on the contract." (emphasis added). (pp. 11-13)

2. It is thus clear that the Securities Law intends to forbid the enforcement of an investment advisory contract that has not been reduced to writing. It also appears clear, however, that "the contract" of which the Act speaks in subsection 71(h) is N.J.A.C. 13:47A-6.3(a)(57)'s investment advisory contract that was not reduced to writing. Thus, in the instant case, the Act's reference to forbidding suits based on "the contract" would translate to a suit based on the employment agreement that Solimine dishonored. The question here is whether that prohibition reaches beyond the dishonored employment agreement to include the promise of employment itself. (pp. 13-14)

3. Suits to enforce contracts and suits predicated upon promissory estoppel are different in both their requisite elements and their goals. To prevail on a claim of breach of contract, a party must show that a contract has been made, with an offer, acceptance, and consideration all present, and that the moving party has performed or is excused from performing. If a party prevails on this claim, the party is entitled to expectation damages in order to recover the benefit of its bargain. Promissory estoppel, on the other hand, requires that a promise has been made, that the promise was made with the expectation it be relied upon, that the moving party reasonably relied on the promise, and that the promisee incurred a detriment due to that reliance when the promisor broke the promise. If those elements are proved, the promisee may be awarded reliance damages so as to restore him or her to the position he or she was in before the parties met. (pp. 15-19)

4. Goldfarb's claim of promissory estoppel is not a "suit based on the contract." It is instead a suit based on his reasonable reliance, to his detriment, on Solimine's promise of a job. However far-reaching the prohibitions of the Securities Law may be, they do not

2

prohibit the instant action and its goal of deterring persons from reneging on promises. There was no error in allowing plaintiff's promissory estoppel claim to have been presented to the jury. Where the trial court did err was in mis-matching the permissible cause of action -- promissory estoppel -- with the impermissible remedy -- expectation damages -- that would have accompanied a contract-based claim. (pp. 19-21)

5. Turning to the Appellate Division's discussion of the "family office" exception recognized by federal law, the record reveals that the jury was never asked to find whether the employment offered by defendant met the definition of a "family office." A factual finding was necessary; it was beyond the ability of the Appellate Division to exercise original jurisdiction to resolve that question. The Court therefore rejects the appellate judgment's reliance on the family office exception. (pp. 22-26)

6. The Court also expresses reservations about the reasoning adopted by the Appellate Division in concluding that the Securities Law incorporated the federal definition of "family office." The timeline of the enactment of the federal family office exception presents a set of circumstances that raises serious doubt that the Securities Law, by definition, could have incorporated that exception under settled principles of statutory incorporation. To eliminate a misperception that could arise from future application of the Appellate Division's reasoning, the Court voids the Appellate Division's analysis on this issue. (pp. 26-28)

7. The Court leaves to the remand court the responsibility to determine the admissibility of any and all proffered experts the parties may seek to present. (pp. 28-29)

**AFFIRMED AS MODIFIED. REMANDED for further proceedings.**

**JUSTICE ALBIN, dissenting,** explains that in passing the Securities Law, the Legislature's clearly expressed goal was to remove any financial incentive for an investment advisor to enter into an investment advisory contract not reduced to writing. Justice Albin notes that the Legislature did not suggest that some damages are available for breach of the writing requirement; it simply barred "any suit on the contract" for a violation of the Securities Law. See N.J.S.A. 49:3-71(h). In Justice Albin's view, the majority's importation of an equitable remedy to rescue a sophisticated professional from his statutory dereliction, by granting him reliance damages on a promissory estoppel claim, contravenes the clear language of the Securities Law, undermines its consumer protection purposes, and ultimately will eviscerate its writing requirement.

**CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a dissent. JUSTICE PATTERSON did not participate.**

3

# SUPREME COURT OF NEW JERSEY
## A-24 September Term 2019
## 083256

Jed Goldfarb,

Plaintiff-Respondent,

v.

David Solimine,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose decision is reported, in
part, at 460 N.J. Super. 22 (App. Div. 2019).

| Argued | Decided |
|---|---|
| September 15, 2020 | February 18, 2021 |

Christine A. Amalfe argued the cause for appellant
(Gibbons, attorneys; Christine A. Amalfe, of counsel and
on the briefs, and Richard S. Zackin and Christopher
Walsh, on the briefs).

Andrew M. Moskowitz argued the cause for respondent
(Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins,
attorneys; Andrew M. Moskowitz, of counsel and on the
briefs).

Jon W. Green argued the cause for amicus curiae
National Employment Lawyers Association of New
Jersey (Green Savits, attorneys; Jon W. Green, of counsel
and on the brief).

1

JUSTICE LaVECCHIA delivered the opinion of the Court.

Plaintiff Jed Goldfarb claims that defendant David Solimine reneged on a promise of employment after Goldfarb quit his job to accept the promised position. Although an employment agreement and its terms were never reduced to writing, plaintiff asserts that he received specific promises of a base salary and return on investments for managing in-house the sizeable investment portfolio of defendant's family. The key issue in this appeal involves whether plaintiff may bring a promissory estoppel claim because he relied on defendant's promise in quitting his prior employment.

Defendant maintains that plaintiff cannot bring a promissory estoppel claim because New Jersey's Uniform Securities Law of 1997, N.J.S.A. 49:3-47 to -89 (the Securities Law or the Act), requires investment advisers to have a writing memorializing the terms for an investment relationship. According to defendant, the Act's writing requirement should have doomed plaintiff's action. Defendant argues that the trial court erred in allowing the matter to be tried to a jury, which found in favor of plaintiff on liability and damages. He therefore asks this Court to reverse the Appellate Division's judgment, which affirmed the liability determination but remanded for a new damages trial.

We now hold that the Securities Law does not bar plaintiff's promissory estoppel claim for reliance damages, and we affirm the liability judgment on that claim. We further affirm the remand for a new damages trial in which plaintiff will have the opportunity to prove reliance damages. He is not entitled to benefit-of-the-bargain damages.

The plain language of the Securities Law that governs investment practices and arrangements bars "any suit on the contract" when its "making" is in violation of the Act. N.J.S.A. 49:3-71(h). Defendant's argument equates the job offer he made to plaintiff -- an offer he alleges violated the Act's writing requirement -- with "the contract" mentioned in N.J.S.A. 49:3-71(h). Thus, defendant contends, plaintiff's promissory estoppel claim is barred by the statute because it is "any suit on the contract." But plaintiff's promissory estoppel claim is not an action based on "the contract" referenced in the Securities Law. Rather, it is a claim based on defendant's broken promise to engage in an employment relationship with plaintiff.

The distinction can perhaps most readily be understood through the distinct types of recovery at issue. Benefit-of-the-bargain or expectation damages look forward. Here, they would look ahead to what plaintiff would have earned if he had worked for defendant, and they would grant him recovery based on that projected employment. Defendant is correct that

3

plaintiff here could not recover under the unwritten employment agreement between them: that agreement -- "the contract" within the meaning of N.J.S.A. 49:3-71(h) -- violated the Act's writing requirement, and so plaintiff is statutorily barred from bringing suit based on that agreement. Plaintiff is not entitled to benefit-of-the-bargain damages from the unachieved investment employment position.

But he is entitled to seek reliance damages. Reliance damages look backward. Here, they would look back to determine what losses plaintiff suffered as a result of his relying on defendant's later-broken promise -- what he would have earned had he not quit his job to work for defendant. A promissory estoppel claim provides equitable relief to restore a plaintiff to the position he would have been in, had the relied-upon promise not been made and later broken. The claim allows relief designed to deter individuals who make promises with the intent that others rely on them and thereafter seek to avoid the consequences of that reliance when the promise is broken. Properly viewed, Goldfarb's promissory estoppel claim for reliance damages does not violate the Act's plain language, nor does it undermine the consumer protection purposes of the Securities Act. It is a claim separate and apart from a contract-based claim that would be barred under the Act.

4

For the reasons provided, the judgment of the Appellate Division is affirmed as modified by the reasoning contained herein. To the extent that the Appellate Division relied on an alternative basis for its liability holding -- that a later-adopted federal law "family office" exception has been incorporated into our Securities Law -- we reject that reasoning and void that portion of the court's analysis. We affirm the remand for a new trial on damages and order that the admissibility of any damages experts the parties may choose to present at that trial should be determined by the remand court.

## I.

### A.

This matter has a convoluted history, much of which is not germane to the issues before us. The appeal arrived before the Appellate Division following a jury trial and extensive pre-trial motion activity, which included whether the trial judge who presided over the matter should have recused herself. The jury determined liability in favor of plaintiff and awarded plaintiff $237,000 in expectation damages after the trial court had barred the testimony of plaintiff's economic expert.

Plaintiff appealed the denial of his recusal motion, maintaining that the judge's continued involvement and rulings tainted the soundness of the

5

damages award, but that the liability judgment was insulated by the jury's findings.  He sought a new trial only on damages.

Defendant cross-appealed, invoking the Securities Law and arguing, among other points, that the agreement between the parties was governed, and barred, by the Act and its writing requirement.  The Appellate Division's published opinion in this matter dealt comprehensively with the recusal error that occurred here.  Goldfarb v. Solimine, 460 N.J. Super. 22 (App. Div. 2019).  That plays no part in our present review.[1]  Our focus centers on defendant's arguments concerning the promissory estoppel claim.

B.

The factual tableau for plaintiff's promissory estoppel claim is summarized from the trial proceedings.

First, certain basic matters are undisputed in the record.  Prior to meeting defendant, Goldfarb was employed as a research analyst[2] with Monness,

---

[1]  Neither party challenges the Appellate Division's ruling with respect to the trial judge's recusal.  Nor does either party challenge the Appellate Division's use of its original jurisdiction to decide the statutory question.  Indeed, defendant's only challenge to the Appellate Division's exercise of original jurisdiction is that, having vacated the trial judge's ruling on plaintiff's expert witness and remanded for a new trial, the appellate court should not have "proceeded to address the merits" of the expert's admissibility.

[2]  Plaintiff, an attorney, left the practice of law to pursue finance starting in 2004.

Crespi, Hardt & Co., Inc., where he was tasked with analyzing financial markets in order to offer investment advice. From 2009 to 2013, he earned between approximately $308,000 and $466,000 per year, exclusively from commissions. Goldfarb met defendant in March 2013. The factual disputes arise from the interactions that followed.

According to Goldfarb's testimony, over the course of several conversations with defendant, the two discussed, among other things, anticipated market increases in a particular stock and Goldfarb's interest in new employment. The conversations continued on the phone and in-person, and included a later call and meeting with defendant's father, Emil, and another employee. Goldfarb testified that, eventually, defendant offered him a job managing defendant's family's sizable investment portfolio. Plaintiff testified that he was promised a base salary between $250,000 and $275,000, between fifteen and twenty percent "of the profits and loss that [he] generated on [the] portfolio," and between ten and fifteen percent of any of the family's profits directly attributable to his investment advice. His employment was to begin in July or August of 2013, and he would be formally employed by either defendant or his father, Emil, personally, or by one of two of the family's companies, DMS Global Ventures or Kore Insurance.

7

According to Goldfarb, defendant assured him on June 20, 2013 that he had a job. Goldfarb asked defendant for a term sheet, but defendant failed to provide any writing memorializing their agreement. There was a dispute in this record over whether defendant told plaintiff that such a document had been mailed to him, but a written employment agreement was never produced or presented to plaintiff. Nevertheless, counting on the new job that had been offered, Goldfarb quit his old one and began providing defendant with profitable stock tips and financial advice. Then, in August 2013, defendant told Goldfarb that he would not employ him. Goldfarb commenced this action in response.

Although a variety of claims were advanced in pleadings that ensued, plaintiff's second amended complaint asserted his claim for promissory estoppel, which seeks "payment for wages lost in reliance on promises of employment by [d]efendant." Defendant's answer asserted that the employment was not in writing and thus was contrary to the requirements of the Securities Law. Defendant later filed a motion for summary judgment, reiterating the argument that plaintiff's action was precluded by the Securities Law. The trial court denied the motion.

Trial commenced on July 20, 2016.[3] Plaintiff sought the admission of expert testimony concerning his lost wages. The court granted defendant's motion to bar the witness, finding that the expert lacked a proper basis on which to ground his testimony.

At the close of the evidence, defendant moved for dismissal pursuant to Rule 4:40-1, again arguing that the agreement between the parties was governed, and barred, by the Securities Law and its writing requirement. The court denied the motion, submitting the case to the jury on a theory of promissory estoppel. The court limited plaintiff's potential damages, describing them as restricted "to the minimum salary he would have made" in defendant's employ, and concluding that any claim for commissions or profit-sharing was barred by the Securities Law. The jury found for plaintiff on liability and awarded $237,000 in damages.

Defendant filed a motion for judgment notwithstanding the verdict, again arguing that the Securities Law required the parties to set forth the terms of plaintiff's employment in writing. According to defendant, plaintiff argued for the first time that their agreement fell within a "family office" exception to the Act. The court denied the motion.

---

[3] Just prior to trial, plaintiff filed a motion for the judge's recusal. The Appellate Division's published decision thoroughly reviews that issue and its resolution. Goldfarb, 460 N.J. Super. at 26-34.

The Appellate Division published part of its opinion, in which it reversed the trial judge's refusal to recuse herself, and, accordingly vacated several rulings that plaintiff had challenged. Goldfarb, 460 N.J. Super. at 27. However, the Appellate Division "affirm[ed] the jury finding of liability." Ibid. The appellate court explained that it could address a number of issues on a de novo basis or on the basis of original jurisdiction and concluded "that plaintiff was entitled to present evidence of his reliance damages," that the trial court should not have barred plaintiff's economic damages expert, and that plaintiff's "claims were not barred by law or equity." Ibid. Accordingly, the Appellate Division remanded plaintiff's promissory estoppel claim for a new trial, limited to the issue of reliance damages, to be conducted before a new judge. Ibid.

We granted defendant's petition for certification, 240 N.J. 83 (2019), and the motion of the National Employment Lawyers Association of New Jersey (NELA) to appear as amicus curiae.

We address the following issues: (1) whether a promissory estoppel claim is barred by the Securities Act in the absence of a written agreement, and, if not, whether plaintiff may obtain reliance damages; (2) the potential incorporation of a federal "family office" exception from the definition of an

10

"investment advisor" under our Securities Law;[4] and (3) the Appellate Division's exercise of original jurisdiction to compel the admissibility of plaintiff's expert witness in the remanded trial on damages.

## II.

We begin with the first issue, which calls for a review of the scope of the cited Securities Act provisions, the distinctions between contract-based claims and the doctrine of promissory estoppel, as well as the remedies associated with each.

## A.

Key to defendant's argument that plaintiff may not bring an action based on an unwritten contract is the present Securities Law, New Jersey's "comprehensive statutory scheme of securities regulation and investor protection." Kaufman v. i-Stat Corp., 165 N.J. 94, 112 (2000); see Cola v. Terzano, 129 N.J. Super. 47, 53-54 (Law Div. 1974) (discussing the

---

[4] Although this issue was raised in connection with the dispute over the Act's applicability to plaintiff, we address it separately because it was raised in motion practice before the trial court, expanded upon in a post-trial motion for judgment notwithstanding the verdict, and advanced again before the Appellate Division.

We do not address a separate statutory argument concerning the Act's inapplicability advanced by plaintiff. Plaintiff had argued to the Appellate Division that the Act by its plain language does not apply to an employee-employer relationship. The Appellate Division rejected the contention, and plaintiff did not cross-petition to challenge that determination.

development of securities law in New Jersey and noting that the Uniform Securities Law was adopted "to promote uniformity and standardization of transactions" consistent with guidance from sister jurisdictions), aff'd, 156 N.J. Super. 77 (App. Div. 1977); see generally Stevens v. Liberty Packing Corp., 111 N.J. Eq. 61, 65-66 (Ch. 1932) (emphasizing that securities laws exist to protect the uninitiated and to prevent frauds perpetrated on the public at large). Consistent with its protective purpose, the Act prohibits any party from engaging in dishonest and unethical practices -- "as the bureau chief may by rule define" such practices -- vis-à-vis the investing public. N.J.S.A. 49:3-53(a)(3).

The "bureau chief" referred to in that section is the Chief of the Bureau of Securities, which is charged with administration of the Act. See N.J.S.A. 49:3-66(a). The writing requirement on which defendant relies is prescribed by the regulations promulgated by the bureau chief pursuant to the Act, see N.J.A.C. 13:47A-6.1(a): On the list of "[d]ishonest or unethical practices" prohibited by N.J.S.A. 49:3-53(a), the Bureau of Securities has included "[e]ntering into, extending, or renewing any investment advisory contract, unless such contract is in writing and discloses" certain material terms.[5]

---

[5] Material terms include the advisory fee, the formula for computing the fee, the amount of a prepaid fee, whether the contract grants discretionary authority to the investor, and other items. See N.J.A.C. 13:47A-6.3(a)(57).

12

N.J.A.C. 13:47A-6.3(a)(57) (emphasis added). The Act defines "investment advisory services" as "those services rendered by an 'investment adviser' as defined" in the statute. N.J.S.A. 49:3-49(g)(2)(ix). An "investment adviser," in turn, is defined as "any person who, for direct or indirect compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, selling or holding securities." N.J.S.A. 49:3-49(g)(1)(i).

Although the writing requirement is found in a regulation, it is reinforced by statute: N.J.S.A. 49:3-71(h) declares that "[n]o person who has made or engaged in the performance of any contract in violation of any provision of this act or any rule or order hereunder . . . may base any suit <u>on the contract</u>." (emphasis added).

It is thus clear that the Securities Law intends to forbid the enforcement of an investment advisory contract that has not been reduced to writing. It also appears clear, however, that "the contract" of which the Act speaks in subsection 71(h) is N.J.A.C. 13:47A-6.3(a)(57)'s investment advisory contract that was not reduced to writing. Thus, in the instant case, the Act's reference to forbidding suits based on "the contract" would translate to a suit based on the employment agreement that Solimine dishonored.

13

Defendant argues that N.J.S.A. 49:3-71(h)'s prohibition reaches beyond that dishonored employment agreement to include the promise of employment itself. Defendant interprets the subsection to forbid any lawsuit between the parties on the basis of their dealings, arguing that is the only way to give full effect to the Legislature's intention in enacting that section. Solimine argues that Goldfarb's attempt to distinguish the employment promise from the employment agreement puts form over substance and cites McCann v. Biss, 65 N.J. 301 (1974), as supporting that proposition.

Plaintiff grounds his opposition to that argument in the statute's plain language and urges that we determine whether the Legislature intended the Act to prohibit promissory estoppel claims such as his by examining the words the Legislature chose to express its intent. According to Goldfarb, his promissory estoppel claim asks not that the employment agreement be enforced or that he receive the benefit of the bargain he was denied, but rather that he be placed in the position he would have been had the parties never met. Goldfarb accordingly seeks reliance damages.

Amicus NELA supports plaintiff's position that a promissory estoppel claim is not barred under the Securities Law because it is not an action on "the contract" but a different type of cause of action that is not based on the contract.

14

B.

We thus consider whether promissory estoppel and breach of contract are equivalent causes of action, such that the Securities Law's ban on suits based on "the contract" also prohibits suits based on promissory estoppel.

1.

To prevail on a claim of breach of contract,

> [o]ur law imposes on a plaintiff the burden to prove four elements: first, that "the parties entered into a contract containing certain terms"; second, that "plaintiffs did what the contract required them to do"; third, that "defendants did not do what the contract required them to do," defined as a "breach of the contract"; and fourth, that "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs."
>
> [Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alterations omitted) (quoting Model Jury Charges (Civil), 4.10A "The Contract Claim -- Generally" (approved May 1998)).]

Bedrock case law instructs that "[a] contract is an agreement resulting in obligation enforceable at law." Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 24 (1958). "[T]he basic features of a contract" are "offer, acceptance, consideration, and performance by both parties." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 439 (2013). "A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'"

15

<u>Weichert Co. Realtors v. Ryan</u>, 128 N.J. 427, 435 (1992) (quoting <u>Caldwell</u>, 26 N.J. at 24-25).

The traditional remedy for breach of contract is expectation damages. <u>See</u> <u>Coyle v. Englander's</u>, 199 N.J. Super. 212, 214 (App. Div. 1985) (characterizing expectation damages, "i.e., loss of the benefit of the bargain," as the "traditional" form of damages for breach of contract). The purpose of such compensating damages "is to put the injured party in as good a position as if performance had been rendered." <u>Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.</u>, 191 N.J. 1, 13 (2007) (ellipsis omitted) (quoting <u>Donovan v. Bachstadt</u>, 91 N.J. 434, 444 (1982)); <u>see</u> <u>Restatement (Second) of Contracts: Purposes of Remedies</u>, § 344(a) (Am. Law Inst. 1981) ("Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee: (a) his 'expectation interest,' which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.").

2.

Promissory estoppel is different -- in theory and in its elements. "Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3)

16

reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008); see Model Jury Charges (Civil), 4.10K "Promissory Estoppel" (approved May 1998). This Court has long emphasized that promissory estoppel is "a departure from the classic doctrine of consideration that the promise and the consideration must purport to be the motive each for the other," providing instead that the operative "reliance is on a promise." Friedman v. Tappan Dev. Corp., 22 N.J. 523, 536 (1956); accord Raedeke v. Gibraltar Sav. & Loan Ass'n, 517 P.2d 1157, 1161 (Cal. 1974) (defining promissory estoppel as "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced").

Following the Restatement (Second) of Contracts, courts, including those in this state, allow reliance damages to parties who prevail on claims of promissory estoppel. See Restatement (Second) of Contracts § 90 cmt. d (Am. Law Inst. 1981) ("[T]he same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise."); see, e.g., Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J.

17

Super. 461, 473 (App. Div. 1998) ("Plaintiff's complaint neither seeks enforcement of the lease nor speculative lost profits which it might have earned had the lease been fully and successfully negotiated. Plaintiff merely seeks to recoup damages it incurred, including the loss of its Margate leasehold, in reasonably relying to its detriment upon defendant's promise.").

3.

Suits to enforce contracts and suits predicated upon promissory estoppel are thus different in both their requisite elements and their goals.[6] To prevail on a claim of breach of contract, a party must show that a contract has been made, with an offer, acceptance, and consideration all present, and that the moving party has performed or is excused from performing. If a party prevails on this claim, the party is entitled to expectation damages in order to recover the benefit of its bargain. Promissory estoppel, on the other hand, requires that

---

[6] Scholars accept that the two claims are distinct and distinguishable. As some have succinctly put it, as the doctrine of promissory estoppel has "developed over the years, it [has come] to have an independent significance, to be viewed not just as a subcategory of 'contract,' but as a distinct theory of action -- one not necessarily grounded in the principles of contract or circumscribed by its limitations." Charles L. Knapp et al., Problems in Contract Law 250 (8th ed. 2016); see also Michael B. Metzger & Michael J. Phillips, The Emergence of Promissory Estoppel as an Independent Theory of Recovery, 35 Rutgers L. Rev. 472, 512 (1983) (concluding similarly, after surveying cases around the country, that "there is considerable reason to regard promissory estoppel as a cause of action sufficiently distinguishable from a contract claim to qualify as a truly independent basis of recovery").

a promise has been made, that the promise was made with the expectation it be relied upon, that the moving party reasonably relied on the promise, and that the promisee incurred a detriment due to that reliance when the promisor broke the promise. If a promisee proves those elements of a promissory estoppel claim, the promisee may be awarded reliance damages so as to restore him or her to the position he or she was in before the parties met. See, e.g., id. at 473; Peck v. Imedia Inc., 293 N.J. Super. 151, 165-68 (App. Div. 1996).

C.

Considering the distinctions between the two forms of claims, we conclude that Goldfarb's claim of promissory estoppel is not a "suit based on the contract." It is instead a suit based on his reasonable reliance, to his detriment, on Solimine's promise of a job.

Goldfarb has expressly represented in his filings and argument before the Court that he is not seeking compensation he would have received from Solimine had the employment contract been executed, but rather a sum of money to put him in the position in which he would have been had the parties never met in the first place. However far-reaching the prohibitions of the Securities Law may be, they do not prohibit the instant action and its goal of deterring persons from reneging on promises made with the expectation that

19

there would be reliance when, in fact, there is reliance to the detriment of the promisee. That happened to Goldfarb.

Because we train our focus on Goldfarb's claim for reliance damages, defendant's argument that this result is inconsistent with McCann v. Biss must fail. In McCann, a jilted real estate agent whose breach of contract claim was barred by the statute of frauds sought to recover her commission by arguing before this Court that (1) the defendants had unreasonably interfered with the contract; and (2) she should receive her commission as restitution. 65 N.J. at 303-04. This Court rejected both arguments, holding that "a broker, who may not recover commissions from a seller directly by reason of the statute of frauds, may not accomplish the same result indirectly . . . . Such a claim actually seeks to enforce the oral agreement [and] amounts to an effort to evade the statute." Id. at 310.

In his argument in this appeal, plaintiff is not seeking, and we are not permitting, expectation or benefit-of-the-bargain damages, but rather reliance damages. He is therefore not doing indirectly what he may not do directly, as was prohibited in McCann. McCann is not on point for the type of damages we permit here. Plaintiff is entitled to present damages that would put him in the position that he would have been in had the parties never met. Accordingly, we perceive no error in the trial court's allowing plaintiff's

20

promissory estoppel claim to have been presented to the jury to determine defendant's liability. Where the trial court did err was in mis-matching the permissible cause of action -- promissory estoppel -- with the impermissible remedy -- expectation damages -- that would have accompanied a contract-based claim, had such a claim been asserted by plaintiff and permitted by statute.

For the reasons expressed, we affirm the judgment of the Appellate Division that upheld the jury's finding of liability against defendant on the promissory estoppel claim that seeks only reliance damages. And we conclude that the Appellate Division was correct to remand this matter for a new trial for an appropriate assessment of plaintiff's reliance damages only.[7]

---

[7] For completeness, we note that some confusion in this matter may have arisen due to Goldfarb's raising, at some point, a "quasi-contractual" claim. Before the Legislature enacted the Securities Law, this Court made it abundantly clear that breach of contract and suits for restitution based on quasi-contract are two distinct, indeed mutually exclusive, causes of action. In Caldwell, our Court explained that a quasi-contract is not a "true" contract that is based on the expressions of assent of two parties, but rather a construct "created by the law, for reasons of justice." 26 N.J. at 28 (internal quotation marks omitted). Indeed, the Court has held that a plaintiff cannot, at the same time, maintain a claim for breach of contract and one for quasi-contract. C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co. of Newark, 14 N.J. 146, 162-63 (1953) (quoting Moser v. Milner Hotels, Inc., 6 N.J. 278, 280-81 (1951)). Regardless of whether Goldfarb at one time advocated his claim to be a form of "quasi-contract" not barred as an action on "the contract" proscribed by the Securities Law, we recognize the validity of his claim for reliance damages under his promissory estoppel theory as more accurate, and sound, in these circumstances.

III.

We turn now to the applicability of the federal "family office" exception.

A.

Goldfarb had argued that defendant should not be able to call upon the Securities Law in his defense, for several reasons. Some were rejected by the Appellate Division and are not before this Court. See, e.g., supra at 11 n.4. But one argument the Appellate Division relied on, in the alternative, for holding that the Securities Law did not operate as a bar in this instance bears mention. Goldfarb maintained that he is not an "investment adviser" within the meaning of the Securities Law because he fits into the "family office" exception. Defendant urges us to address the Appellate Division's reliance on this argument.

First, and procedurally, we note defendant maintains that Goldfarb failed to timely raise this argument. It appears, however, that Goldfarb did advance this argument in the earlier proceedings.[8]

---

[8] In his "Brief in Opposition to [Solimine's] Motion to Dismiss and in Support of Cross-Motion to File a First Amended Complaint," Goldfarb says that, "[b]eginning in March of 2013, [Solimine] actively 'recruited' [Goldfarb] to become an employee of [Solimine's] 'family office.'" Goldfarb explained, in a footnote immediately thereafter, that he meant to use the phrase "family office" as a term of art, providing the full definition of "family office" in 17 C.F.R. § 275.202(a)(11)(G)-1(b). We agree with Goldfarb that this argument has been preserved.

Second, and substantively, defendant argues that the Appellate Division erred in concluding that a family office exception has been incorporated into our State's version of the Uniform Securities Law, and that, in any event, Goldfarb can find no shelter in Solimine's "family office" because there were no factual findings made by the jury on this issue.

B.

N.J.S.A. 49:3-71(h), N.J.S.A. 49:3-53(a)(3), and N.J.A.C. 13:47A-6.3(a)(57), in combination, create the prohibition against suits brought on unwritten contracts that defendant invokes. But Goldfarb claims exemption from the writing requirement on the ground that he is not an "investment adviser" within the meaning of the Securities Law in light of that Law's exemption of family offices. As defined in N.J.S.A. 49:3-49(g)(1)(i), an "investment adviser" is

> any person who, for direct or indirect compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, selling or holding securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities.

The next subsection contains the following carveout:

> "Investment adviser" does not include: a person whose only clients in this State are other investment advisers, any person that is registered as an "investment adviser"

23

under section 203 of the "Investment Advisers Act of 1940," 15 U.S.C. § 80b-3, or excluded from the definition of an "investment adviser" under paragraph (11) of subsection (a) of section 202 of the "Investment Advisers Act of 1940," 15 U.S.C. § 80b-2(a)(11), broker-dealers, banks, bank holding companies, savings institutions, trust companies, insurance companies, investment companies as defined in the "Investment Company Act of 1940," pension or profit-sharing trusts, or other financial institutions or institutional buyers, whether acting for themselves or as trustees.

[N.J.S.A. 49:3-49(g)(2)(vi).]

The federal provision to which that statute refers excludes from its definition of "investment adviser" "any family office, as defined by rule, regulation, or order of the Commission, in accordance with the purposes of this subchapter." 15 U.S.C. § 80b-2(a)(11)(G).[9] The Securities and Exchange Commission defines "family office" as

a company (including its directors, partners, members, managers, trustees, and employees acting within the scope of their position or employment) that:

(1) Has no clients other than family clients; provided that if a person that is not a family client becomes a client of the family office as a result of the death of a family member or key employee

---

[9] In addition to the direct reference to particular federal statutes in section 49(g)(2)(vi), as noted above, the Securities Law generally instructs that "[t]his act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact similar laws and to co-ordinate the interpretation and administration of this act with related federal regulations." N.J.S.A. 49:3-75.

or other involuntary transfer from a family member or key employee, that person shall be deemed to be a family client for purposes of this section for one year following the completion of the transfer of legal title to the assets resulting from the involuntary event;

(2) Is wholly owned by family clients and is exclusively controlled (directly or indirectly) by one or more family members and/or family entities; and

(3) Does not hold itself out to the public as an investment adviser.

[17 C.F.R. § 275.202(a)(11)(G)-1(b)(1) to (3).]

Goldfarb argued that the employment he was offered would fit within that federal definition of "family office" and that he may therefore bring suit based on an unwritten contract.

## C.

Examination of the record reveals that the jury was never asked to find whether the employment offered by defendant met the definition of a "family office." A factual finding was necessary; it was beyond the ability of the Appellate Division to exercise original jurisdiction to resolve that question. See State v. Santos, 210 N.J. 129, 142 (2012) (describing Rule 2:10-5 as "allowing [an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discouraging its use if factfinding is involved").

For that reason alone, we reject the appellate judgment's reliance on the family office exception, as argued by Goldfarb.

D.

That said, we are compelled to express reservation about the reasoning adopted by the Appellate Division when it concluded that the Securities Law, in N.J.S.A. 49:3-49(g)(2)(vi), incorporated 15 U.S.C. § 80b-2(a)(11)(G)'s definition of "investment adviser" and the exclusions thereto, and therefore also necessarily incorporated the definition of "family office" provided in the Code of Federal Regulations.

As defendant points out, the Securities Law was adopted in 1997, and its definitions section has not been updated since. See L. 1997, c. 276, § 2(g). Subsection (G) of § 80b-2(a)(11), on the other hand, was not enacted until 2010, as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. 111-203, § 409, 124 Stat. 1376, 1575 (2010). That timeline presents a set of circumstances that raises serious doubt that the Securities Law, by definition, could have incorporated subsection (G).

The New Jersey Constitution states that "[n]o act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part

26

thereof, shall be applicable, except by inserting it in such act." N.J. Const. art. IV, § 7, ¶ 5. To comport with that requirement, this Court has clarified that

> when a statute incorporates another by specifically referring to it by title or section number, only the precise terms of the incorporated statute as it then exists become part of the incorporating statute; absent language to the contrary, subsequent amendments to the incorporated statute have no effect on the incorporating statute. . . . [I]f a statute, instead of incorporating the terms of another statute, incorporates a general body of law, the rule is that subsequent changes in that body of law do become part of the incorporating statute.
>
> [In re Commitment of Edward S., 118 N.J. 118, 132 (1990).]

Edward S. explained that to comply with our Constitution's limits on enactment by reference, the Legislature must cite to the precise provision being incorporated. Ibid. When our Securities Law was enacted, the federal provision, § 80b-2(a)(11), contained only subsections (A) to (F). Thus, to the extent that the Securities Law did incorporate the federal act, the incorporation would extend only to those sections. Edward S. does note that the Legislature can explicitly provide that subsequent amendments will become part of state law, but the presumption is that they do not. Ibid. Here, the Securities Law does not so provide -- absent, perhaps, the general and overarching instruction that the "act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact similar laws and to co-ordinate the

27

interpretation and administration of this act with related federal regulations." See N.J.S.A. 49:3-75.

We will not reach this constitutional issue when there is another basis for resolving this claim. See In re Civil Commitment of D.Y., 218 N.J. 359, 379 (2014). However, for clarity's sake, we underscore our reservations about the portion of the Appellate Division's reasoning that has its foundation in the belief that Goldfarb's claim was saved from application of the Securities Law by operation of the federal family office exception.

Because the necessary factual findings to even apply the exception are lacking, we reverse that aspect of the decision under review. And even though this reasoning occurs in the unpublished portion of the appellate opinion, for purposes of eliminating a misperception that could arise from future application of the Appellate Division's reasoning, we void the Appellate Division's analysis used to sustain this alternative basis for its judgment.

IV.

Because this matter is being remanded for a new trial on damages and new decisions will likely be made concerning the expert testimony to be provided by both sides, we leave the responsibility to determine the admissibility of any and all proffered experts the parties may seek to present entirely to the remand court.

28

## V.

The Appellate Division's judgment is affirmed as modified, and the matter is remanded for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a dissent. JUSTICE PATTERSON did not participate.

29

Jed Goldfarb,

Plaintiff-Respondent,

v.

David Solimine,

Defendant-Appellant.

JUSTICE ALBIN, dissenting.

Jed Goldfarb is an investment advisor (and a lawyer) whose conduct is governed by New Jersey's Uniform Securities Law of 1997, N.J.S.A. 49:3-47 to -89 (the Securities Law). In violation of the Securities Law, Goldfarb entered into an investment advisory contract with a client without reducing that contract to writing and disclosing the contract's material terms. N.J.S.A. 49:3-53(a); N.J.A.C. 13:47A-6.3(a)(57). Indeed, by refusing to abide by the writing requirement, Goldfarb engaged in a "dishonest or unethical practice[]." N.J.S.A. 49:3-53(a)(3). The Legislature has decreed that an investment advisor, such as Goldfarb, who has violated the writing requirement is barred from bringing "any suit on the contract." N.J.S.A. 49:3-71(h) (emphasis added).

1

I agree with the majority that Goldfarb cannot "recover under [his] unwritten employment agreement" with defendant because he "is statutorily barred from bringing suit based on that agreement."  See ante at ___ (slip op. at 4).  I do not agree, however, that forbidding "any suit on the contract" means that Goldfarb can sue for "reliance damages" -- just not for "benefit-of-the-bargain damages."  See ibid.  The Securities Law is a consumer protection statute.  See Kaufman v. i-Stat Corp., 165 N.J. 94, 112 (2000).  In passing the Securities Law, the Legislature's clearly expressed goal was to remove any financial incentive for an investment advisor to enter into an investment advisory contract not reduced to writing.  The Legislature did not suggest that some damages are available to an investment advisor for his breach of the writing requirement; it simply barred "any suit on the contract" for a violation of the Securities Law.  See N.J.S.A. 49:3-71(h).

In my view, the majority's importation of an equitable remedy to rescue a sophisticated professional such as Goldfarb from his statutory dereliction, by granting him reliance damages on a promissory estoppel claim, contravenes the clear language of the Securities Law and undermines its consumer protection purposes.

I therefore respectfully dissent.

I.

The Securities Law and the Bureau of Securities' enforcement regulations do not distinguish between different theories of contract law or different forms of recovery for violations of the Securities Law's writing requirement. The Legislature's and the Bureau of Securities' essential goal was to preclude an investment advisor from gaining any financial benefit by engaging in an oral agreement in violation of the statute and its implementing regulations. At its core, the statutory scheme is directed at deterring wrongful conduct by investment advisors and protecting investors. See N.J.S.A. 49:3-53(a); see also 47 N.J.R. 692(a) (Apr. 6, 2015) ("The Bureau believes that these proposed [regulations] are necessary to ensure that persons involved in the securities markets are held to a high standard of fairness in their dealings with the general public and are necessary to ensure the welfare of New Jersey investors.").

The Legislature barred an investment advisor from enforcing "any suit" based on an oral contract. N.J.S.A. 49:3-71(h). Any means any -- whether the suit is based on legal or equitable grounds. The question is whether this Court can use its equitable powers to evade a plainly stated legislative enactment, when a quintessential breach of contract claim is alternatively pled as a promissory estoppel claim. Under the Securities Law, an impermissible

3

lawsuit based on an illicit oral agreement does not become permissible simply because it is recast as a promissory estoppel claim -- particularly when the facts underlying the oral agreement remain unchanged.

That a court's equitable powers must bow to a legislative enactment is one of "the most basic principles of our democratic form of government." See Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 545 (2013). That is the doctrinal basis for the maxim "equity follows the law." Ibid. Using equity to undermine the efficacy of a law strikes at the very heart of that maxim.

Here, promissory estoppel does much the same as a typical suit for breach of contract -- it allows for the legal enforcement of a promise -- but without the traditional requirement of consideration. See Friedman v. Tappan Dev. Corp., 22 N.J. 523, 535-37 (1956); 4 Williston on Contracts § 8:4 (4th ed. 2020). Even the comments to the Restatement (Second) of Contracts -- the Restatement referenced by the majority, ante at ___ (slip op. at 17) -- state that a promise made binding under the doctrine of promissory estoppel "is a contract, and full-scale enforcement by normal remedies is often appropriate." Restatement (Second) of Contracts § 90 cmt. d (Am. Law Inst. 1981) (emphasis added). To allow Goldfarb to recover under a theory of promissory

4

estoppel is to give license to an oral agreement for investment advisory services despite the Securities Law's writing requirement.

The majority's conclusion that Goldfarb's suit is not "on the contract" but rather based on his "reliance, to his detriment, on [defendant]'s promise of a job," ante at ___ (slip op. at 19), does not extinguish the fact that Goldfarb and defendant negotiated an oral agreement over approximately five months that was never reduced to writing -- not even in the form of an email by Goldfarb. However the issue is cast, it remains the breach of an oral agreement. Breach of contract examines the issue through the lens of offer, acceptance, and consideration, while promissory estoppel does so through the lens of promise, reliance, and detriment. Whatever legal vocabulary Goldfarb may employ in seeking relief, he engaged in an oral agreement for investment advisory services that the Legislature prohibited by enacting the Securities Law.

Here, permitting a promissory estoppel remedy sanctions the very conduct that the Legislature sought to bar:  investment advisors suing clients based on undefined oral agreements. Goldfarb not only failed to reduce the investment advisory agreement to writing, but also neglected to ascertain specific material terms of the agreement, including whether he would be employed by defendant, defendant's father, or one of their family's companies.

5

See also N.J.A.C. 13:47A-6.3(a)(57) (requiring written disclosure of "the services to be provided, the term of the contract, the advisory fee, the formula for computing the fee, [and] the amount of prepaid fee to be returned in the event of contract termination or non-performance," among other terms). The Securities Law's writing requirement was intended to prevent investment advisors from taking disputes over such oral agreements to court.

## II.

To the extent that every investment advisory agreement is premised on a promise and, presumably, reliance, the majority's decision renders the writing requirement a nullity because promissory estoppel can always breathe life into an otherwise prohibited oral agreement. Every time an investment advisor expends time researching the market and giving stock tips to a consumer based on an alleged oral agreement, the advisor will have a claim for reliance damages. For surely the argument will be that the investment advisor, by relying on the oral promise, suffered a financial loss by not working on some other project.

The claim will be based "on the contract" -- one formed by operation of equity rather than traditional contract law. Yet the Securities Law's method of protecting investors is by prohibiting claims based on an oral agreement altogether, not by distinguishing between the types of damages available to an

6

investment advisor who violates that law. Allowing an investment advisor to sue for detrimental reliance on a prohibited oral agreement ultimately will eviscerate the Securities Law's writing requirement -- remedial legislation enacted for the benefit of investors.

I would reverse the judgment of the Appellate Division and hold that the Securities Law's writing requirement cannot be evaded by a suit in either law or equity. I therefore respectfully dissent.