**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3960-19

DEAN P. MURRAY,

    Plaintiff-Appellant,

v.

MARSHA E. MURRAY,

    Defendant-Respondent.

_____

        Submitted February 9, 2022 – Decided March 23, 2022

        Before Judges Whipple and Geiger.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0308-09.

        Dean P. Murray, appellant pro se.

        Arndt & Sutak, LLC, attorneys for respondent Marsha E. Murray (Alison J. Sutak, on the brief).

        Newman, McDonough, Schofel & Giger, PC, attorneys for respondent guardian ad litem Linda A. Schofel (Linda A. Schofel, on the brief).

PER CURIAM

Plaintiff Dean Murray appeals a June 8, 2020 order granting fees to co-respondent guardian ad litem (GAL) Linda A. Schofel, and denying a request for the judge's recusal. We affirm.

We summarize the relevant facts and the protracted procedural history as informed by our review of the record. On May 3, 2010, the court entered a Dual Judgment of Divorce for plaintiff and defendant/co-respondent Marsha Murray. Plaintiff and defendant have one minor child, S.M., and share joint legal custody, with defendant having primary residential custody. Between 2011 and 2013, post-judgment motion practice resulted in several orders pertaining to the parties' parenting. In 2017, S.M. began refusing meeting with plaintiff. This resulted in an order suspending plaintiff's parenting time unless supervised by a reunification therapist and appointing Schofel as GAL on behalf of S.M.

In November 2018, plaintiff and defendant agreed to split Schofel's GAL fees equally. Schofel charged $375 per hour for her services; she reduced her customary $400 per hour fee because the parties had been involved with other professionals due to S.M.'s refusal to meet with his father. Ultimately, the parties each paid $4,000 for the retainer fee.

In December 2018, Schofel interviewed plaintiff and defendant. In January 2019, she interviewed S.M. In March 2019, Schofel made a home visit

2

to defendant's home where she interviewed S.M., defendant, and their relatives who resided there. Due to plaintiff's financial concerns, Schofel reduced the number of times she met with the parties, whereas she normally meets with parents four or five times. Schofel interviewed most professionals involved with the parties and S.M., and then summarized their respective reports. She did not interview two professionals whom plaintiff did not consent she contact.

Schofel submitted billing statements on January 17, March 15, May 3, May 16, May 22, and July 3, 2019. Schofel did not submit a billing statement in February 2019 because plaintiff did not yet pay the second half of the retainer fee. Later, the court found Schofel's failure to submit a billing statement in February did not prejudice plaintiff.

In her GAL report, Schofel analyzed her findings and submitted recommendations including that the parties and S.M. participate in a camp in Vermont to support the family's reunification. Schofel submitted the report to the court and on May 22, 2019, the court held a case management conference at which the parties accepted Schofel's recommendations. The court subsequently set forth the recommendations in an order.

On August 6, 2019, Schofel filed a notice of motion seeking GAL fees in the amount of $15,487.49 from plaintiff. Defendant paid all fees charged to her.

 A-3960-19

Plaintiff did not pay the balance of $14,210.29. The amount in Schofel's motion included fees for her work to review and revise the certification of her services and interest on the overdue balance. She provided $7,237.50 in courtesy credits.

Schofel submitted a certification of services pursuant to Rule 5:8(b), Rule 5:3-5(c), and R.P.C. 1:5(a). The certification of services sets forth her credentials and curriculum vitae, showing she is a licensed attorney and licensed clinical social worker. She addressed the time, labor, novelty and difficulty of the questions in this case, which involved a child "caught in the middle of hostilities between his parents and who had not seen his father for more than one year prior to Schofel's involvement."

By letter brief dated June 3, 2020 and emailed to the court that day, plaintiff requested the motion judge recuse himself from the matter. The court found no basis for it to recuse itself. Responding to plaintiff's claim that the court was biased, the court explained why it permitted parenting time only when supervised by a reunification therapist:

> So, at no[] point, Mr. Murray, that I can see did I ever terminate your parenting time. I did provide that your parenting time should be supervised by Peaceful Healing. That was not meant to be discriminatory towards you nor biased towards you but rather the information before the [c]ourt was that [S.M.] was refusing to meet with you, that an order that [S.M.] continue to meet with you was not going to be

4

productive. I was hoping that if we could have supervised parenting time that would facilitate the relationship between you and [S.M.] -- reunification to occur will allow you to have parenting time in a supervised context and that would eliminate any issues that the defendant may have had regarding parenting time with you. . . .

. . . .

[The court]: So, Mr. Murray, would you agree that the fundamental problem in this case is that [S.M.] essentially refuses to have any contact with you?

[Plaintiff]: Oh, 100 percent, Your Honor.

. . . .

[The court]: So pretty much all of the actions that were taken in this case were based on the fact that it was pretty much undisputed between both parties that [S.M.] refused to have any contact with you. So, under those circumstances, for me to just issue an order that [S.M.] shall continue to have parenting time with the father just as he did before was pretty unrealistic because he refused to have contact with you, so that's why unfortunately we had to bring in outside professionals to try to help resolve the issue of why [S.M.] was refusing to meet with you.

. . . .

We had to figure out the reasons why [S.M.] wouldn't meet with you and then figure out a way to fix the problem and that's why these outside professionals were brought in. They were certainly not brought in because of any bias against you or any prejudice towards you. They were brought in to try to solve this

5

A-3960-19

problem that, unfortunately, was beyond my ability as a judge to solve on my own.

The court next found Schofel performed the work she was required to perform. Plaintiff never filed an application asking the court to stop or decrease the charges before they were incurred. In response to plaintiff's objections to the amount of services Schofel rendered, the court explained:

> [Schofel] submitted a detailed report to the [c]ourt which reflected her findings and the basis for those findings. I found that report to be very helpful. I think the report was also very helpful to both parties so I don't really see a basis for me to reduce that fee based on some arbitrary or capricious finding as to what I think was fair and reasonable.
>
> . . . .
>
> She's reduced her fees. She's not seeking any money for the collection of those fees. She's basically seeking to be paid by you the same amount that she was paid by the defendant for the professional services that she rendered.
>
> I don't think the law allows me to just arbitrarily reduce that amount based on what I think is fair. You haven't pointed out in your papers, you haven't pointed to any specific charges that you think were egregious or unreasonable.

Addressing plaintiff's argument that he does not have the ability to pay experts, the court stated:

6

[The court]: So assuming there was an inquiry into ability to pay and I found that you didn't have the ability to pay, that would mean that there would be no experts appointed in the case which would mean that there'd be no way for the [c]ourt to try to resolve the problem. The only option to the [c]ourt at that point would have been either to say, okay, I don't know what's causing the dynamics between [S.M.] and his father but since neither party can afford any experts the [c]ourt will have to -- then I would have to either say you get no parenting time because I don't know why [S.M. is] not meeting with you or I'd say parenting time can continue as normal despite any adverse effects that may result to [S.M.]. So, that would not certainly be a suitable position for the [c]ourt to take which is why we try to select experts who are willing to work at reduced fees.

The court found Schofel's certification of services complied with R.P.C. 1.5(a) and she was entitled to the fees under Rule 5:8(b), Rule 5:2-5(c), and R.P.C. 1.7(a). Thus, the court found plaintiff responsible for paying Schofel's GAL fees in the amount of $15,487.49. The court considered that plaintiff's financial circumstances did not permit him to pay the full amount, so the court entered an order, requiring plaintiff to pay $15,487.49 in installments of $1,290.62 per month starting at the end of June 2020.

On the same day, the court denied plaintiff's motion for the court to recuse itself. This appeal followed.

Plaintiff argues the court erred in denying his request for recusal asserting a reasonable person could infer that the court's impartiality or the appearance of

7

impartiality could have been questioned. Plaintiff raises a litany of assertions which he argues reflect the court's unabashed bias against him and in favor of defendant, including allegedly biased statements in court and in chambers, the termination of his parenting time without a hearing, condoning defendant's efforts to obstruct reunification, and appointing experts without investigating whether the parties have the ability to pay. Plaintiff argued the court may be biased against his place of national origin, Trinidad and Tobago, and has "a lack of empathy . . . for divorced fathers." Plaintiff also argues that the court abused its discretion in hearing plaintiff's verbal recusal application at the June 5, 2020 hearing.

Whether a judge should disqualify himself or herself is a matter within the sound discretion of the judge. State v. McCabe, 201 N.J. 34, 45 (2010); Goldfarb v. Solimine, 460 N.J. Super. 22, 30 (App. Div. 2019). "Motions for recusal ordinarily require a case-by-case analysis of the particular facts presented." McCabe, 201 N.J. at 46. We review de novo whether the judge applied the proper legal standard, and we conclude he did.

Rule 1:12-1 provides, in pertinent part:

> The judge of any court shall be disqualified on the court's own motion and shall not sit in any matter. . . .

(g) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.

The Code of Judicial Conduct Rule 3.17 similarly provides, in pertinent part:

(B) Judges shall disqualify themselves in proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned, including but not limited to the following:

(1) Personal bias, prejudice or knowledge. Judges shall disqualify themselves if they have a personal bias or prejudice toward a party or a party's lawyer or have personal knowledge of disputed evidentiary facts involved in the proceeding.

"Any party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." R. 1:12-2. "A movant need not show actual prejudice; 'potential bias' will suffice." Goldfarb, 460 N.J. Super. at 31. "[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514 (2008) (emphasis in original). "[B]ias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." State v. Marshall, 148 N.J. 89, 186 (1997). "[T]he belief that the proceedings were unfair must be objectively reasonable." Id. at 279.

Based on our review of the record, the trial court properly exercised its discretion in denying plaintiff's recusal request because there was no basis in the record for it to recuse itself under <u>Rule</u> 1:12-1 or Code of Judicial Conduct Rule 3.17.  The court's rulings were designed to be in the child's best interest.  The court appointed experts because of the court's inability to identify why S.M. refused to meet with plaintiff.

Plaintiff's bare, conclusory allegations of the court's bias have no basis in the record.  On the contrary, ample evidence in the record shows that the court's actions were unbiased and neutrally crafted to resolve the strained relationship between S.M. and his father in a manner that was in the child's best interests. The court's rulings were not designed to impose a financial burden on plaintiff and prevent parenting time.  The parties' motion practice and ensuing financial obligations flowed from S.M.'s refusal to meet with his father.  Moreover, because the evidence does not show bias by the court, plaintiff's subjective perceptions of bias are not "objectively reasonable."  <u>Marshall</u>, 148 N.J. at 279. Plaintiff's disappointment and frustration with the proceedings does not demonstrate that the court was objectively biased.  <u>Id.</u> at 186.

Moreover, the court did not err in verbally adjudicating plaintiff's recusal request, and plaintiff's argument on this issue is moot.  The court made oral

findings and conclusions on the merits on June 5, 2020, and entered a corresponding order on June 8, 2020. Thus, plaintiff's argument is moot. N.Y. Susquehanna & W. Ry. Corp. v. N.J. Dep't of Treasury, Div. of Tax'n, 6 N.J. Tax 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985) ("An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.").

Plaintiff next argues that the trial court erred by awarding fees to Schofel, and that, alternatively, the court should have reduced the amount of fees due Schofel. We disagree.

Our scope of review of the family part's fact-finding function is limited. N.J. Div. of Youth and Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012). Factual findings "are binding on appeal when supported by adequate, substantial credible evidence." O'Connor v. O'Connor, 349 N.J. Super. 381, 400-01 (App. Div. 2012) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

"[We] will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). "The Court finds an

abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

When custody or parenting time or visitation is an issue, the court may appoint a GAL "to represent the best interests of the child . . . if the circumstances warrant such an appointment." R. 5:8B(a). The GAL renders services to the court on behalf of the child. Id. The GAL's responsibilities are as follows:

> The guardian ad litem shall file a written report with the court setting forth findings and recommendations and the basis thereof, and shall be available to testify and shall be subject to cross-examination thereon. In addition to the preparation of a written report and the obligation to testify and be cross-examined thereon, the duties of a guardian may include, but need not be limited to, the following:
>
> 1. Interviewing the children and parties.
>
> 2. Interviewing other persons possessing relevant information.
>
> 3. Obtaining relevant documentary evidence.
>
> 4. Conferring with counsel for the parties.

5. Conferring with the court, on notice to counsel.

6. Obtaining the assistance of independent experts, on leave of court.

7. Obtaining the assistance of a lawyer for the child (Rule 5:8A) on leave of court.

8. Such other matters as the guardian ad litem may request, on leave of court.

[Id.]

As to fees, Rule 5:8B(d) provides:

The hourly rate to be charged by the guardian ad litem shall be fixed in the initial appointing order and the guardian ad litem shall submit informational monthly statements to the parties. The court shall have the power and discretion to fix a retainer in the appointing order and to allocate final payment of the guardian ad litem fee between the parties. The guardian ad litem shall submit a certification of services at the conclusion of the matter, on notice to the parties, who will thereafter be afforded the right to respond prior to the court fixing the final fee.

"A lawyer's fee must be reasonable." Giarusso v. Giarusso, 455 N.J. Super. 42, 50 (App. Div. 2018) (quoting Rosenberg v. Rosenberg, 286 N.J. Super. 58, 69 (App. Div. 1995)). Determining the reasonableness of the fee "involves determining the number of hours reasonably expended multiplied by a reasonable hourly rate." Id. at 51 (citing Rendine v. Pantzer, 141 N.J. 292,

334-35 (1995)). The factors to be considered in determining the reasonableness of an attorney's fee include: "the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly, the amount involved and the results obtained and whether the fee was fixed or contingent." Ibid. (quoting R.P.C. 1.5(a)(1)(4)(8)).

Here, the trial court properly based its decision on substantial credible evidence in the record. McKinnon, 191 N.J. at 254. Plaintiff, a licensed practicing attorney, signed the retainer agreement obligating him to pay half of the GAL fees. Ample evidence shows Schofel rendered GAL services in conformance with Rule 5:8B, reduced the amount of hours she would normally expend while also maintaining her ability to effectively perform services for the court on behalf of S.M., reduced her customary fee, and applied thousands of dollars in courtesy credits towards the billing statement. Plaintiff points to no charges that he believed were "egregious or unreasonable." Plaintiff offers no legal authority or facts to support his argument that the court could have or should have reduced the amount of fees. Rather, plaintiff seeks to renegotiate the fees well after signing the retainer agreement, participating in Schofel's evaluation, and accepting her GAL recommendations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-3960-19