# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2510-23

C.M.-O.,[1]

    Plaintiff-Respondent,

v.

T.O.,

    Defendant-Appellant.

_____

> Submitted March 18, 2025 – Decided April 23, 2025
>
> Before Judges Gooden Brown and Smith.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1385-24.
>
> Einhorn, Barbarito, Frost, Botwinick, Nunn & Musmanno, PC, attorneys for appellant (Matheu D. Nunn, Bonnie C. Frost, and Jessie M. Mills, on the briefs).
>
> C.M.-O., respondent pro se.

---

[1]  We refer to the parties using their initials to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

PER CURIAM

Defendant appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA).[2] Defendant contends the trial court erred by making unsupported Silver[3] prong one and two findings. Defendant also argues that the trial court was biased against him. Our review of the record leads us to affirm for the reasons which follow.

I.

The parties were married for twenty years and had two children together, C.O. and B.O. We recount a series of incidents testified to by the parties at the FRO hearing.

A.

In 2021, plaintiff served defendant with a divorce proposal. On October 22, 2021, defendant requested more time from plaintiff to consider and address the proposal. When plaintiff declined to permit defendant additional time, he struck a wall several times in front of plaintiff. Later that day, plaintiff obtained

---

[2] N.J.S.A. 2C:25-17 to -35.

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

2

a temporary restraining order (TRO) against defendant. Police then arrived at the parties' residence and instructed defendant to leave. After negotiating civil restraints with defendant, plaintiff dismissed the TRO. The civil restraints terms required that defendant leave the home, find new housing within thirty days, and pay plaintiff $100,000.

In August 2022, plaintiff dropped off B.O. for a therapy appointment, which defendant was also attending. As plaintiff left the therapist's office, defendant confronted her and told plaintiff he would "bury her." Next, in December 2022, defendant approached plaintiff and B.O. when he saw them at a gym. Again, he stated that he would "bury her."

B.

Between July and December 2023, defendant sent plaintiff numerous emails. While plaintiff had routed defendant's emails to her spam folder, she still reviewed the emails in order to comply with the parties' Marital Settlement Agreement requirement that she remain in communication with defendant. The contents of nine of those emails became evidence at the FRO hearing. As they make up a substantial part of the FRO record, we need not recite them verbatim here. The emails contained an incessant and vindictive series of epithets which defendant directed at plaintiff. Defendant belittled plaintiff's intelligence, her

A-2510-23

"financial aptitude", and her capacity for achieving success. Defendant described plaintiff as: "stupid"; "ignorant"; a "charlatan"; a "buffoon"; lacking integrity; a "liar and POS"; and a "pathetic, whining character." Among other accusations, defendant accused plaintiff of having "deep deficiencies" as a mother. In one email, he described plaintiff's attorney as a "bitch."

C.

During the parties' separation, plaintiff learned that B.O. was no longer eligible to attend school in Saddle River as plaintiff and the child had relocated away from the community. She requested a residency hearing, which the Saddle River Board scheduled for December 13, 2023, after its general meeting. On December 13, the Board notified defendant of the residency hearing.

Defendant arrived at the hearing before plaintiff and entered the school during the Board's general meeting. Plaintiff arrived with her boyfriend, L.S., but entered the school alone. After spotting defendant inside, plaintiff left the school and asked L.S. to meet her outside. Defendant eventually exited the school and approached plaintiff and L.S. He told plaintiff, "you['d] better run." During the episode, defendant then told L.S., "don't worry . . . I'm not going to kill her tonight." After plaintiff called the police, defendant told L.S., "don't worry . . . I don't have a gun tonight." Police arrived, interviewed the parties,

A-2510-23

and left.  The parties waited at the school for the residency hearing without further incident.

D.

The next day, December 14, plaintiff filed a complaint seeking a temporary restraining order (TRO), alleging harassment as the predicate act, stemming from the Saddle River residency hearing incident.  The complaint included the past incidents between the parties detailed above.  Plaintiff amended the TRO on December 28 to include additional pre-December 13 history.

Starting on January 30, 2024, the FRO trial took place over three non-consecutive days.  Plaintiff, defendant, and L.S. all testified.  The court also reviewed defendant's emails to plaintiff as well as surveillance footage outside the Saddle River residency hearing.

The trial court found plaintiff proved by a preponderance of the evidence that defendant committed the predicate act of harassment under N.J.S.A. 2C:33-4. The court initially made credibility findings.  Although the court found that plaintiff was "not totally a believable witness[,]" it found defendant was "without credibility and without any real believability . . . ."  The court stated:

> [Defendant] was often evasive, did not listen to questions, [and] reworked those questions for . . . his

A-2510-23

own purposes for . . . this hearing. He often changed the questions asked of him by counsel and . . . twisted those questions so that his narrative with regard to these issues would be presented in a better light for his purposes.

The trial court rejected defendant's argument that his statements to L.S. were meant to be sardonic and facetious.

The court analyzed prong one of Silver, assessing whether defendant acted with the purpose to harass the plaintiff. It stated:

Great pains [were taken by defendant to show] that he had no intent to harass, that this [c]ourt finds that to be without real credibility and without any real believability[,] as I stated on the record regarding credibility. The testimony regarding [defendant] not going to kill her – ["]don't worry, [L.S.] I'm not going to kill her tonight,["] basically infers it may not be tonight but it may be some other time. ["]I don't have my gun with me tonight.["] When pieced together[,] it only leads this [c]ourt to the position that [defendant] did have the intent to harass, annoy and bother the plaintiff.

The court also addressed Silver prong two, finding defendant: struck and damaged a wall while plaintiff was nearby; improperly engaged with plaintiff at the Ramsey Farmer's Market, the therapist's office, and the gym; stated that he would "bury her"; and sent "harassing communications" to plaintiff by email.

6

Considering N.J.S.A. 2C-25-9(a)(1),[4] the court found a history of domestic violence. Turning to N.J.S.A. 2C-25-9(a)(2),[5] the court found defendant's statement that he would not kill plaintiff "tonight" constituted a threat of future harm.

On March 4, 2024, the trial court entered an FRO against defendant, barring all contact and communication with plaintiff, B.O., and L.S., while imposing other conditions and restrictions.

Defendant appeals the FRO, arguing that plaintiff failed to make a sufficient showing under both prongs of Silver. Plaintiff further argues that the trial court exhibited bias when the court referenced defendant's educational background.

## II.

### A.

Our limited scope of review in domestic violence cases is well established. "We accord substantial deference to Family Part judges, who routinely hear

---

[4] "The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse[.]" N.J.S.A. 2C-25-9(a)(1).

[5] "The existence of immediate danger to person or property[.]" N.J.S.A. 2C-25-9(a)(2).

domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

Deference is particularly warranted where "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "'sees and observes the witnesses,'" thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). It follows that we will not disturb a trial court's factual findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

Consequently, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J.

414, 428 (2015). We do not, however, accord such deference to the court's legal conclusions, which are reviewed de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

B.

In J.D. v. A.M.W., 475 N.J. Super. 306, 313-14 (App. Div. 2023), we recited our well-settled analytic framework for domestic violence complaints:

> In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider include, but are not limited to:
>
> > (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
> >
> > (2) The existence of immediate danger to person or property;
> >
> > (3) The financial circumstances of the plaintiff and defendant;

A-2510-23

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

[(Alterations in original) (citations reformatted).]

III.

A.

Defendant contends that the trial court erroneously entered an FRO against him because the evidence did not support: the finding of a predicate act against him, as required by Silver's first prong; or that a restraining order was necessary to protect plaintiff from further abuse under Silver's second prong. We are unpersuaded.

Harassment, prohibited by N.J.S.A. 2C:33-4, is a predicate act of domestic violence. N.J.S.A. 2C:25-19(a)(13); J.D., 207 N.J. at 475.

[A] person commits [the predicate act of harassment] if, with purpose to harass another, [the person]:

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient

10

hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a) to (c).]

"Our courts have struggled with the proofs needed to support a domestic violence restraining order based on claims of harassment," and "[n]ot all offensive or bothersome behavior . . . constitutes harassment." J.D., 207 N.J. at 482-83. Because "direct proof of intent" is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006). Therefore, "[a] history of domestic violence may serve to give content to otherwise ambiguous behavior and support entry of a restraining order." J.D., 207 N.J. at 483; see also State v. Hoffman, 149 N.J. 564, 577 (1997) (explaining that in determining whether a defendant's conduct constitutes harassment, a judge may use "[c]ommon sense and experience," and "[t]he incidents under scrutiny must be examined in light of the totality of the circumstances"); C.M.F. v. R.G.F., 418

11

N.J. Super. 396, 404 (App. Div. 2011) (noting "the very nature of the verbal attack, the manner of its delivery and the attendant circumstances" may "strongly suggest a purpose to harass"); Pazienza v. Camarata, 381 N.J. Super. 173, 183-84 (App. Div. 2005) (explaining text messages sent from defendant to plaintiff "when viewed in the context of defendant's prior conduct towards plaintiff, was likely to cause plaintiff annoyance," and the "purpose to harass on defendant's part [was] easily inferred").

Here, there is an ample record from which the trial court could infer defendant's clear purpose to harass. Facts in the record include: the December 13 school board meeting incident; numerous offensive and coarse emails; face to face confrontations between the parties where defendant stated he would "bury" plaintiff; and defendant's striking of the wall several times in plaintiff's presence. All of these facts support the court's finding that defendant intended to harass plaintiff when he confronted plaintiff and L.S. and said, "you['d] better run", "don't worry, [L.S.], I'm not going to kill her tonight", and "don't worry, [L.S.], I don't have my gun tonight."

Defendant's claim before us that his statements cannot constitute harassment because they were not directed at plaintiff are without merit. The trial court found defendant not credible, and our review of the record reveals no

reason to disturb that finding. Evidence adduced at trial further shows plaintiff was present when defendant told her she'd better run, and was also present for defendant's statement to L.S., "assuring" him that defendant did not have a gun and that he would not kill plaintiff.

B.

We turn to defendant's argument that plaintiff failed to meet her burden of proof to satisfy Silver prong two.

Once a predicate act is proven by the preponderance of the credible evidence, the court must then assess the second prong of the two-step Silver test, "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127).

Defendant contends that the trial court "should not have relied on the fact the [p]laintiff previously obtained two TROs and the parties' entered into civil restraints as a basis to enter an FRO." Again, we are not convinced.

The trial court turned to N.J.S.A. 2C:25-29(a)(1) and (2) to make its prong two findings. The court cited an extensive litany of facts which reflected a significant history of domestic violence, including facts which were a part of

13                                                          A-2510-23

previous temporary restraining orders that were dismissed, and facts which may have ultimately led to civil restraints agreements. Defendant points to no caselaw to support the proposition that the trial court could not consider facts established in plaintiff's previous TROs against defendant as evidence of a "previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse[.]" N.J.S.A. 2C:25-29(a)(1). The record shows the now disputed TROs were predicated on events which the issuing court found were substantiated by credible evidence. In addition to the ample domestic violence history found by the court under N.J.S.A. 2C:25-29(a)(1), the court found that defendant's statement that he was "not going to kill [plaintiff] tonight" gave rise to "the existence of immediate danger to [plaintiff's] person" because it implied that he might kill her some other time. This finding clearly goes to plaintiff's need for protection of the courts going forward. N.J.S.A. 2C:25-29(a)(2).

We easily conclude the trial court committed no error in its Silver prong two analysis.

C.

Defendant's final argument, not raised below, is that the trial court exhibited bias against defendant because of its reference to facts outside the

14

record related to defendant's education.  Defendant argues that the trial court's knowledge of and reference to his educational achievements "impacted [the court's] view of the testimony."

Where a defendant seeks to raise an issue on appeal not raised below, we review that contention under the plain error standard.  R. 2:10-2.  Generally, we do not consider issues not raised before the Family Part "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."  N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229 (1973)).  "[A]n appellate court will not reverse an error not brought to the attention of the trial court unless the appellant shows . . . it was 'plain error,' that is, 'error clearly capable of producing an unjust result.'"  Ibid. (citing R. 2:10-2).

Although the argument was not raised below, we briefly consider it.  Rule 1:12-1 provides, in pertinent part:

> The judge of any court shall be disqualified on the court's own motion and shall not sit in any matter. . . .
>
> (g) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe

Similarly, the Code of Judicial Conduct r. 3.17(B) provides, in pertinent part:

> Judges shall disqualify themselves in proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned, including but not limited to the following:
>
> > Personal bias, prejudice or knowledge. Judges shall disqualify themselves if they have a personal bias or prejudice toward a party or a party's lawyer or have personal knowledge of disputed evidentiary facts involved in the proceeding.

"Any party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." R. 1:12-2. "A movant need not show actual prejudice; 'potential bias' will suffice." Goldfarb v. Solimine, 460 N.J. Super. 22, 31 (App. Div. 2019). "[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514 (2008) (emphasis omitted). "[B]ias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." State v. Marshall, 148 N.J. 89, 186 (1997). "[T]he belief that the proceedings were unfair must be objectively reasonable." Id. at 279.

The trial court commented on defendant's status as a recipient of two degrees from elite universities in the context reviewing defendant's virulent

A-2510-23

emails directed to plaintiff. The emails contained abusive and foul language directed squarely at plaintiff. The court did not comment on what degrees defendant held, nor when he received them. It simply noted that not everyone has been fortunate enough to reach defendant's level of academic achievement. Defendant, represented by counsel at the hearing, did not object to the court's statement, and the hearing proceeded to conclusion shortly thereafter without further reference to defendant's education.

We cannot reach an objectively reasonable conclusion from the court's statement that the FRO proceedings were unfair. Ibid. The court's Silver prong one and two findings were driven by credible evidence in the record conclusively establishing defendant's own words and actions, not by his level of education. We conclude defendant cannot show bias emanating from the court's statement. It follows, then, that defendant cannot show plain error.

Any of defendant's remaining claims not addressed here lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division